MELVIN JOSEPH GEARY, APPELLANT, *v.* THE
STATE OF NEVADA, RESPONDENT.

No. 33410

April 26, 1999                                    977 P.2d 344

[Rehearing denied December 3, 1999]

*Michael R. Specchio,* Public Defender, and *John Reese Petty,* Chief Deputy Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Respondent.

---

## OPINION

*Per Curiam:*

In 1993, a jury found appellant Melvin Joseph Geary guilty of first degree murder with the use of a deadly weapon and sentenced him to death. This court affirmed his conviction, reversed his death sentence, and remanded for a new penalty hearing. In October 1998, another jury returned a sentence of death, and Geary subsequently informed the district court that he wanted to waive his direct appeal. The district court concluded that Geary was competent to make such a decision, and this automatic appeal follows.[1]

### FACTS

In February 1973, Geary murdered Annette Morris by stabbing her while he was under the influence of alcohol. He was convicted

---

[1]Having thoroughly reviewed the record in this matter, we conclude that further briefing and oral argument are not warranted.

of her murder and sentenced to serve life in prison without the possibility of parole. The Pardons Board eventually commuted his sentence to life in prison with the possibility of parole. Subsequently, in March 1986, after serving thirteen years, Geary was paroled.

In 1990, Geary resumed drinking alcohol and lost each of his jobs as a chef for various Sparks casinos. In July 1992, Geary was homeless, jobless, and drinking constantly. He met a man who referred him to Edward Theodore Colvin. Colvin was a retired recovered alcoholic who provided help to people who were down on their luck. Colvin gave Geary a place to live until he got on his feet again. Apparently, Colvin would speak harshly in an effort to motivate people to take control of their lives.

Geary lived with Colvin for only a few days when, in a drunken rage, he stabbed Colvin repeatedly after Colvin spoke harshly to him. Colvin died as a result of stab wounds to his face and neck and from inhalation of blood (Colvin drowned in his own blood). Colvin's money was missing from his pocket. Geary apparently did not remember committing this crime due to an alcoholic blackout. A couple of days later, Geary realized what he had done and called the police.

After a jury trial, Geary was convicted of first degree murder with the use of a deadly weapon and was sentenced to death. The aggravating circumstances were (1) the murder was committed while under a sentence of imprisonment (parole for the Morris murder); (2) the murder was committed by a person previously convicted of another murder; and (3) the murder was committed at random and without apparent motive. *See* NRS 200.033(1), (2), (9).

This court initially affirmed Geary's conviction and sentence of death. Geary v. State, 110 Nev. 261, 871 P.2d 927 (1994) (*Geary I*). Subsequently, this court granted Geary's petition for rehearing, vacated his death sentence, and remanded for a new penalty hearing. Geary v. State, 112 Nev. 1434, 930 P.2d 719 (1996) (*Geary II*). This court held that the "random and without apparent motive" aggravating circumstance was inapplicable in this case and that some of the penalty phase jury instructions were improper. *Id.* The state filed a petition for rehearing, and this court granted it in part and denied it in part. Geary v. State, 114 Nev. 100, 952 P.2d 431 (1998) (*Geary III*).

The second penalty hearing was conducted in October 1998. The jury returned a sentence of death after determining that the two aggravating circumstances—under sentence of imprisonment and previously committed another murder—were not outweighed by any mitigating circumstances. Geary subsequently informed the district court that he would waive his right to an appeal from his death sentence.

In response to inquiries from Geary's counsel, this court issued an order on February 17, 1999, outlining the proper procedure when a defendant who is sentenced to death wishes to waive his appellate rights. We remanded this matter for the district court to conduct an evidentiary hearing to determine whether Geary was competent to waive his direct appeal. We further directed the district court to determine whether the Washoe County Public Defender's Office could appropriately continue to represent Geary on appeal or whether independent counsel should be appointed. This court directed counsel for the parties to file points and authorities addressing the validity of Geary's waiver of his right to appeal. Both Geary and the state have complied with that directive and indicate that Geary is indeed competent to waive his appeal.

The district court conducted the required hearings. Geary and his counsel agreed that the Public Defender's Office should continue to represent Geary, and the prosecutor did not object. Accordingly, the district court ordered that the Public Defender's Office represent Geary through these appellate proceedings. The district court further appointed two psychiatrists to evaluate Geary's competency. Both doctors reported that Geary was competent to waive his appellate rights. At the evidentiary hearing, the district court questioned Geary, ensured that he understood the ramifications of his decision, and concluded that he was competent to waive his direct appeal. The district court issued written findings of fact that Geary was competent and validly waived his right to appeal his death sentence. This automatic appeal follows. As noted, neither Geary nor his defense attorneys dispute the district court's findings.

## DISCUSSION

*Geary's competence to waive his right to appeal his death sentence*

NRS 177.055(1) provides, "When upon a plea of not guilty a judgment of death is entered, an appeal is deemed automatically taken by the defendant without any action by him or his counsel, unless the defendant or his counsel affirmatively waives the appeal within 30 days after the rendition of the judgment." To waive one's automatic right to an appeal from a death sentence, the defendant must show that his or her decision was "intelligently made and with full comprehension of its ramifications." Cole v. State, 101 Nev. 585, 588, 707 P.2d 545, 547 (1985); *see also* Gilmore v. Utah, 429 U.S. 1012, *reh'g denied,* 429 U.S. 1030 (1976) (waiver must be made knowingly and intelligently by a defendant competent to make the rational choice to forgo fur-

ther, and possibly life-saving, litigation). Before accepting the defendant's waiver, the district court must conduct a hearing to determine competence. Kirksey v. State, 107 Nev. 499, 502, 814 P.2d 1008, 1010 (1991). The test for competence is (1) whether the defendant has sufficient present ability to consult with his or her attorney with a reasonable degree of factual understanding, and (2) whether the defendant has a rational and factual understanding of the proceedings. Doggett v. Warden, 93 Nev. 591, 593, 572 P.2d 207, 208 (1977). The district court is then required to enter formal, written findings of fact regarding the defendant's competence. *Kirksey,* 107 Nev. at 502, 814 P.2d at 1010; *see also* Calambro v. State, 111 Nev. 1015, 1019 n.4, 900 P.2d 340, 343 n.4 (1995) (emphasizing the district court's "mandatory duty" to enter written findings regarding competency when a defendant seeks to waive an appeal from a death sentence). This court has the duty to review those findings, and the record as a whole, to determine the validity of the death sentence. *Kirksey*, 107 Nev. at 502, 814 P.2d at 1010.

In the present matter, both Geary and his attorney informed the district court that they have communicated extensively about Geary's decision to waive his appeal. Both appointed psychiatrists reported that Geary understood the proceedings. The district court thoroughly canvassed Geary about his decision, including his understanding of the ramifications, and Geary remained steadfast in his desire to forgo his appeal. Additionally, in the documents filed in this court, Geary's attorney informed this court that Geary is indeed competent. Clearly, Geary's competence is not in dispute. After carefully reviewing the entire record, we conclude that the district court correctly found that Geary is competent to waive his appeal.

*This court's mandatory review pursuant to NRS 177.055(2)*

Despite Geary's valid waiver of his appeal, this court must conduct a mandatory review pursuant to NRS 177.055(2). *See Calambro,* 111 Nev. at 1020, 900 P.2d at 343; Flanagan v. State, 105 Nev. 135, 140, 771 P.2d 588, 591 (1989). NRS 177.055(2) requires this court to review whether the evidence supports the aggravating circumstances, whether the death sentence was imposed under the influence of passion, prejudice, or any arbitrary factor, and whether the death sentence is excessive, considering the crime and the defendant.

Here, the evidence overwhelmingly demonstrates the existence

of the aggravating circumstances. There is no dispute that Geary murdered Morris in 1973 and that he was on parole at the time of the Colvin murder in 1992. Further, in *Geary I,* 110 Nev. at 269, 871 P.2d at 932, this court already reviewed the evidence supporting the aggravating circumstances.

Next, after reviewing the record, we conclude that the death sentence was not imposed under the influence of passion, prejudice, or any arbitrary factor, nor is the sentence excessive. The state presented evidence of the brutal nature of the Colvin murder and that Geary chose to consume alcohol despite knowing that he becomes violent when drunk, as evidenced by the Morris murder. The state emphasized that Geary killed a man who was trying to help him by giving him a place to live and that he had killed previously.

The defense presented evidence that Geary was a model prisoner and had no disciplinary infractions while incarcerated for the Morris murder. Testifying in his defense were, among others, numerous prison guards, prison wardens, the prison psychologist for whom Geary worked, and the former dean of the National Judicial College. Despite the quantity and quality of mitigating evidence, we conclude that the sentence of death is not excessive and was not imposed under the influence of passion, prejudice, or any arbitrary factor. Accordingly, we affirm Geary's conviction and sentence of death.[2]

---

[2]THE HONORABLE A. WILLIAM MAUPIN, Justice, voluntarily recused himself from the decision of this matter.